UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

ELMER SANTIAGO,                              :

             Plaintiff,          :          05 Civ. 3035 (PAC)(MHD)

  -against-                                   :          OPINION AND ORDER

NEW YORK CITY POLICE DEPARTMENT,   :

             Defendant.          :

----------------------------------------------------------------x

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Elmer Santiago ("Santiago") commenced this lawsuit pro se alleging that when his former employer, the New York City Police Department ("NYPD"),[1] placed him on restricted duty (thereby removing his ability to carry a firearm) and had him evaluated by the NYPD's Psychological Evaluation Unit, the NYPD should have given him medical leave or treated him as disabled. Its failure to do either violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Both parties moved for summary judgment. Magistrate Judge Dolinger wrote a 41-page thorough and comprehensive Report and Recommendation in which he found, inter alia, that Santiago had neither a serious health condition, nor an impairment which limited his performance of a major life activity. Accordingly, the Magistrate Judge recommended that Plaintiff's motion be denied and Defendant's summary judgment be granted.

---

[1] The NYPD is not a suitable entity under the New York City Charter, Ch. 17 § 396. In light of the disposition of this case, however, it is not necessary to address this issue.

In light of Santiago's objections, the Court has reviewed the matter <u>de novo</u>, but comes to the same conclusion as Magistrate Judge Dolinger.

**STATEMENT OF FACTS**

The facts set forth in the Report and Recommendation are not in substantial dispute (although the legal consequences flowing from them are).  Briefly summarized, the facts are:

Santiago commenced working for the NYPD in 1997.  During the period of time at issue, his assignment was to deliver computers and related equipment for the NYPD's Management Systems Information Division.  He resigned voluntarily on November 8, 2004, and sought reinstatement less than a month later on December 5, 2004.  The NYPD denied reinstatement on April 4, 2005; Santiago sued thereafter.

Santiago alleged that he had a serious health condition; but he claimed the NYPD failed to provide him adequate notice of his rights under the FMLA and denied him leave under the FMLA.  Further, he had an impairment under the ADA that substantially limited his performance of a major life activity; but the NYPD failed to provide him a reasonable accommodation for his disability.  The NYPD's refusal to rehire him was a further violation of the ADA since it was due to an animus against him on account of his alleged psychological problems.

In the two years prior to the voluntary resignation of November 8, 2004, Santiago encountered a number of personal problems stemming from his private life.  While on extended military service leave in July 2003, he had a fight with his wife, another NYPD officer, but the fight was serious enough that the Yonkers police were called to intervene.  Further investigation revealed prior domestic altercations in

November 2002 and February 2003, which also required police involvement. As a result of the July 2003 incident, the NYPD placed him on restricted duty,[2] which withdrew Santiago's authorization to carry a weapon; and referred him for a psychological evaluation at the NYPD's Psychological Evaluation Unit. On July 29, 2003, the evaluation found that there were no psychological reasons preventing Santiago from carrying a firearm.

Approximately one year later, on July 22, 2004, another domestic altercation occurred (Santiago's wife alleged he was stalking her). The next day, the NYPD again removed Santiago's firearm, and immediately referred Santiago to the NYPD's Psychological Evaluation Unit for determination as to fitness to carry firearms. The evaluator recommended, in the exercise of caution, placing him on restricted duty effective July 26, 2004. On July 31, 2004, Santiago advised the Department that he was feeling suicidal. The Department directed that he be taken to Columbia Presbyterian Hospital for emergency evaluation. The record does not reveal what happened at the hospital, except that Santiago left and was not admitted. There is no evidence that any treatment was rendered.

He returned to the Psychological Evaluation Unit in August 2004 and claimed that he was feeling better and was adjusting positively to the stress brought on by his domestic difficulties. The evaluator recommended the continuation of restricted duty.

On November 3, 2004, Santiago's wife and his 13-year-old stepdaughter alleged that Santiago had sexually abused the stepchild. The NYPD determined that a

---

[2] Restricted Duty and Modified Duty both result in removal of the police officer's gun. Restricted Duty is for those who have some physical or mental condition which is unrelated to any disciplinary matter; Modified Duty is for those who are subject to a pending disciplinary matter. Both are temporary and the length of restricted or modified duty depends on the circumstances of each case.

3

further investigation into the sexual abuse charge was warranted, and placed Santiago on modified duty. Santiago was interviewed by the Psychological Evaluation Unit on November 4, 2004. Santiago claimed to be under considerable stress and contrasted those feelings with how he felt immediately prior to the allegations of sexual abuse of his stepchild.

The NYPD provides for unlimited sick leave. In discussing his situation in early November, 2004 with his colleagues, Santiago was advised not to resign, but rather to go on sick leave. Santiago called the NYPD's Military Extended Leave Desk, but the clerks who answered were not helpful. In the event, he did not take further steps to pursue sick leave. Instead, on November 8, 2004, Santiago resigned from the NYPD. One month later, he applied for reinstatement.

His application was denied on April 8, 2005. The denial was based on a review of the entire record over his seven year employment with the NYPD, including the following factors:

(1) being disciplined for a substantiated charge before the CCRB;
(2) on August 19, 2004, being charged with missing from military duty while on extended military leave from the Department;
(3) being designated a chronic absentee based on excessive absences from August, 2001 – October, 2004;
(4) being involved in four domestic relations disputes in a one year period;
(5) the entry of a protective order against him in November, 2004; and
(6) placement on modified duty in connection with his stepdaughter's accusation of sexual misconduct.

Santiago alleges the true reason was an animus against him.

## SUMMARY JUDGMENT STANDARD

Magistrate Judge Dolinger correctly stated and applied the standard for deciding summary judgment motions, pursuant to Rule 56 Fed. R. Civ. P. A motion for

4

summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is appropriate where "the nonmoving party 'has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof'." Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  In ruling on a motion for summary judgment, the Court must "resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006) (citation omitted).  Since Santiago is proceeding pro se, the Court must read his pleadings and other memoranda liberally and construe them in a manner most favorable to him. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  Summary judgment should not be granted where issues of fact are "genuine," and "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## RECOMMENDATION ON FMLA CLAIM

Magistrate Judge Dolinger found that there was no violation of the FMLA for three reasons:

> (1) Santiago did not have a serious health condition and certainly there was no evidence that Santiago was unable to perform his police functions;
> (2) Santiago failed to demonstrate that he ever gave adequate notice to the NYPD that he was requesting FMLA leave.  Santiago claimed only to be "stressed out," but did not provide more information.  A self-diagnosis of being "stressed out" does not amount to a serious health condition, requiring absence from work; and
> (3) Santiago concedes that the NYPD provides unlimited, paid sick leave.  He was certainly aware of this policy, having taken advantage of it during the several years prior to his resignation.  The unlimited paid sick

5

leave is superior to the FMLA for two obvious reasons: it is unlimited and it is paid. Since a more favorable alternative was available to him, Santiago cannot demonstrate any prejudice arising out of the NYPD's failure to tell him about and give him FMLA leave.

The record does not reveal any diagnosis of a physical or mental illness. There is no report of hospitalization, or of medications prescribed, or of treatment by a health care provider. With regard to finding a serious health condition, Magistrate Judge Dolinger could not have come to any other conclusion than the one he came to.

Santiago did call the Military Extended Leave Desk, and his call was answered by an administrative associate, rather than by a person who was empowered by the NYPD to give advice or make recommendations. Concededly, the NYPD could do a better job of providing information concerning the FMLA, but the following conversation with a clerk cannot possibly constitute notice of a FMLA claim:

> **Elmer Santiago:** How are you doing ma'am this morning? I would like to take some leave . . . umm . . . but it's not the kind of leave in the Patrol Guide. I want to take it under the . . . uh . . . FMLA.
> **PAA Jackson:** Ah . . . what type?
> **Elmer Santiago:** Ah . . . I want to get . . . (clears throat) . . . I'm suffering through depression right now . . . and I want to know if I can just take the leave under FMLA.
> **PAA Jackson:** You're a Police Officer?
> **Elmer Santiago:** Yes.
> **PAA Jackson:** I don't think you can take it for yourself . . . hold on.
>                        PUT ON HOLD.
> **PAA Jackson:** Hello?
> **Elmer Santiago:** Yes.
> **PAA Jackson:** Umm . . . no you can't . . . we don't have anything under the FMLA . . . I was told to refer you to Early Intervention.
> **Elmer Santiago:** Ah . . . so I can't take anything under FMLA?
> . . . .
> **PAA Jackson:** "You want the number?"
> **Elmer Santiago:** "Na . . . I have the number thank you very much."
> [Santiago's Objections, Ex. 9.]

Santiago made no further calls and the record does not show any further attempts to claim sick leave.  There is no other suggestion of notice to the NYPD.

Finally, any FMLA recovery must be premised on the finding that the violation of the FMLA caused injury.  No injury can result when the available alternative is superior to the FMLA remedy.  Santiago could have had an unlimited, paid leave had he followed the applicable NYPD's procedure.  He chose not to pursue that route.

## RECOMMENDATION ON ADA

With regard to the ADA, Santiago must allege that he was disabled and that the NYPD failed to provide him with a reasonable accommodation.  Magistrate Judge Dolinger held that:

> (1) Santiago failed to present evidence that he was disabled within the meaning of the ADA.
> (2) Santiago was not suffering from an impairment that precluded or substantially limited his performance of a major life activity.
> (3) Santiago presented no evidence or any limitation on a major life activity, and if these were such a limitation, it was strictly short term.
> (4) There is no credible evidence that Santiago ever requested an accommodation, other than his halfhearted conversations with the Military Extended Leave Desk, immediately before he submitted his voluntary resignation.

Santiago's ADA claim encounters the same factual difficulties as his FMLA claim.  There was never a diagnosis of any physical or mental condition which would constitute an impairment.  The sole evidence of Santiago's mental condition is the various psychological reports made by the NYPD's Psychological Evaluation Unit.  Those reports were not diagnostic, nor were they treatment.  The evaluations were made for the sole purpose of determining whether the NYPD should allow Santiago to carry a firearm.  They did not find an impairment of any kind.

The placement on restricted duty did not mean that the NYPD viewed Santiago as disabled. Placement on restricted duty in 2003 was of very short duration. The restricted duty assignment in 2004 was not lengthy either, was superseded by placement of Santiago on modified duty in November 2004, and terminated by Santiago's voluntary resignation shortly thereafter. While he was on restricted and modified duty, Santiago continued to perform his assigned tasks of delivering computers.

Nor did the NYPD create a hostile work atmosphere which forced Santiago to quit. Placement on restricted or modified duty is well within the NYPD's discretion, which has an obligation to the public, as well as to Santiago. It is clear from the circumstances of this case that it was Santiago's own behavior and family discord which caused the modest and prophylactic steps taken by the NYPD.

Finally, the NYPD had a more than adequate basis for deciding not to reinstate Santiago. Each of the stated reasons is based on objective facts and is independent of any association with a serious health condition or an impairment which limits the performance of a major life activity.

### RECOMMENDATION ON RULE 56(f)

Santiago argued that the NYPD's motion for summary judgment should be denied, so that he could take depositions and get answers to interrogatories which he never served during discovery. Magistrate Judge Dolinger denied the application. He held that Santiago failed to show: (1) what further discovery he needed; (2) why he needed it; (3) what efforts he made to obtain that discovery; and (4) why those efforts failed.

Santiago moved for summary judgment before the close of the discovery, and claimed there was no need for further discovery. Santiago objected to the NYPD's request that its response be delayed until the end of discovery; Santiago again objected when the NYPD requested an extension of discovery, insisting discovery was concluded. The Magistrate Judge also noted his continuing availability to resolve any discovery dispute. In these circumstances, the Magistrate Judge held that Santiago's Rule 56(f) argument was an afterthought, and made in the hope of delaying the decision on the merits.

**LAW APPLICABLE TO OBJECTIONS**

The Magistrate Judge recommended the denial of Santiago's motion for summary judgment, and the granting of the NYPD's motion for summary judgment. Pursuant to Fed. R. Civ. P. 72, he gave the parties ten days in which to file written objections to the Report and Recommendation. Santiago timely filed his objections to the Report and Recommendation. His 35 pages of objections are well researched and extraordinarily well presented for a pro se plaintiff, so much so that they suggest he may have had some legal assistance in their preparation. Santiago attached to his objections an additional twenty exhibits, many of them multi-paged, and Santiago contests all of the Magistrate Judge's legal conclusions.

In reviewing a Magistrate Judge's Report and Recommendation, the Court follows the procedures set forth in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The Court may accept those sections of the report as to which there is no objection, so long as those sections are not facially erroneous. Where objection is made, the Court conducts a "de novo determination of those portions . . . to which objection is made." The "de

novo" review does not require a hearing; rather the Court, in the exercise of sound judicial discretion, may rely on the report and recommendation and accept, reject or modify, in whole or in part, the findings and recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1). Pizarro v. Bartlett, 776 F. Supp. 815 (S.D.N.Y. 1991).

## SANTIAGO'S FMLA OBJECTIONS

With regard to the Family Medical Leave Act, Santiago claims he had a serious health condition; that the NYPD's Evaluator qualifies as a Health Care provider, and her evaluations constitute "treatment" for FMLA purposes; that Santiago gave adequate notice for FMLA purposes; and that it is irrelevant that the NYPD's sick leave policy is more favorable than FMLA, as Santiago was entitled to FMLA benefits.

## SANTIAGO'S ADA OBJECTIONS

As to the Americans with Disabilities Act claim, Santiago maintains that his disability was his inability to carry a firearm which precluded from working in a certain "class of job;" that the Psychological Evaluation was deficient in not making the appropriate diagnosis; that his impairment substantially limited his ability to perform a major life activity; that the Magistrate Judge erroneously excluded an expert opinion of Jose M. Arcaya, who holds a doctorate in psychology plus a law degree; that Santiago had an "Adjustment Disorder with mixed anxiety and depressed mood" as Mr. Arcaya found, based on his review of Santiago's summary judgment papers; that the NYPD regarded Santiago as disabled; that Santiago did request an accommodation and the NYPD did not make a good faith effort to accommodate him; that the NYPD constructively discharged him; and that the denial of reinstatement was the result of an animus against him due to

his disability.

## SANTIAGO'S RULE 56(f) OBJECTIONS

As to the Rule 56(f) motion, Santiago recites his repeated demands for depositions, which the NYPD and its attorneys frustrated by requesting <u>seriatim</u> adjournments or abruptly canceling them and rescheduling.

Finally, Santiago seeks a name clearing hearing for the allegations of sexual abuse.

## DISCUSSION

## FMLA ISSUES

A review of the record in this matter, including an examination of the events leading up to November 8, 2004, when Santiago submitted his voluntary resignation, show that Santiago never had a serious health condition.  Indeed, the record is barren of any hospitalization, physicians' reports or diagnoses, medications prescribed, treatments rendered, or any of the traditional indicia of a serious medical condition.  Santiago's argument relies almost entirely on the reports of the Evaluator in the NYPD's Psychological Evaluation Unit.  Those evaluations were just that and no more.  The interviews conducted were not therapy and no diagnosis was made; nor was treatment rendered or medication prescribed.  As Exhibit 4 to Santiago's Objections of September 17, 2007 makes clear, a NYPD police officer is subject to periodic psychological testing, and that is all that was done here.  Whatever else the evaluations show, they do not demonstrate that Santiago had a serious medical condition.

Mr. Santiago insists that Jose Arcaya's report should be received in evidence as an expert report to support Santiago's FMLA claim.  (Ex. 15 to Santiago's

Objections of September 17, 2007). Mr. Arcaya never physically examined or personally interviewed Santiago, or rendered any type of treatment. His conclusion, such as it is, is based solely on his review of written reports of the Psychological Evaluation Unit and Santiago's summary judgment papers. His opinion is not admissible under Fed. R. Ev. 702 and it does not create any fact issue. The opinion is not offered with any degree of psychological certainty. Instead, Mr. Arcaya states, "This upheaval (i.e., the series of domestic violence charges) is likely to have precipitated marked depression and anxious features" (emphasis supplied). Moreover, the Arcaya report is lacking in any suggestion of long term or permanent condition, and there is certainly no indication that Santiago could not perform his job.

Moreover, the Evaluator's reports from the NYPD Psychological Evaluation Unit were not occasioned by any medical incident. Rather, they grew out of reports of a domestic altercation (2003); and stalking and alleged sexual abuse of a minor (2004). The reports were designed to help the NYPD determine whether or not Santiago could continue to carry a gun.

In order to qualify for coverage under FMLA, a person must have a serious health condition involving continuing treatment by a health care provider. A serious health condition is "an illness . . . impairment or . . . mental condition that involves (A) inpatient care in a hospital . . . or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Treatment means "two or more times by a health care provider" or one treatment plus a "regimen of continuing treatment." 29 C.F.R. § 825.114(a)(2)(i)(A-B). No matter how liberally these statutory and regulatory provisions are construed, they cannot be stretched to cover Santiago. He had never been medically

examined, much less hospitalized, and there has been no treatment, and certainly none by a health care provider.

Santiago's NYPD duty assignment was delivering computers to various NYPD locations for the NYPD's Management Information Systems Division. He was not on patrol duty. Placement on either restricted duty or modified duty meant he could not carry a gun. But that had nothing to do with whether Santiago could continue making computer deliveries. Indeed, he did precisely that in the July-November, 2004 time frame. Moreover, placement on restricted duty is temporary, not permanent. In any event, a recommendation for placement on restricted duty is not a medical diagnosis, nor is it a treatment. Finally, Santiago always maintained that he was fit to perform, but for those episodes of stress induced by family matters.

With regard to notice, the Court finds that Santiago failed to give the NYPD adequate notice that he was requesting time off for a serious health condition. 29 C.F.R. § 825.208(a)(1). The phone calls to clerks at the Military Extended Leave Desk in November, 2004 are hardly adequate so far as FMLA notice is concerned.

Santiago argues that he could not give proper notice because the NYPD was deficient in providing information about FMLA rights. While that may be, the heart of Santiago's problem is that he did not have a serious health condition. Furthermore, Santiago cannot show that he was prejudiced by the failure to provide him with adequate FMLA information. At all times, Santiago had uncontested access to unlimited, paid leave. The NYPD's policy is superior to FMLA leave in two ways: it is unlimited and it is paid. Santiago cannot show any injury arising out of an absence of FMLA notice.

**ADA ISSUES**

Disability within the meaning of the ADA requires a physical or mental impairment which substantially limits a major life activity. 42 U.S.C. § 12102(2). Santiago's self-diagnosis that he was depressed or upset or stressed out does not constitute an impairment. There is no competent, medical diagnosis of depression; and so there can be no impairment. Nor does being placed on restricted duty—and temporarily at that—constitute a limitation of a major life activity.

Santiago's job was moving computers and related equipment and materials for the NYPD's Management Information Systems Division. While police officers performing this work are armed, it is hard to believe that carrying a weapon is critical or essential to the function of moving computer equipment. Furthermore, Santiago's restriction with respect to carrying his weapon, was only temporary and was imposed as a precaution. Mr. Arcaya's report is not admissible and does not create a genuine issue of material fact. Even if it were admitted, there is nothing in it to suggest a long term or permanent disability. Whatever was bothering Santiago, it was short term, as he himself stated. (Santiago Deposition, pg. 107.) Temporary, non-chronic afflictions, as Magistrate Judge Dolinger correctly held, do not amount to a disability under the ADA. Mescall v. Marra, 49 F. Supp. 2d 365, 373-74 (S.D.N.Y. 1999).

Santiago places chief reliance on Williams v. Philadelphia Housing Authority Police Department, 380 F.3d 751 (3d Cir. 2004), which held that a police officer should be allowed to prove an ADA retaliation complaint, based on a diagnosis of depression and the subsequent removal of the officer's weapon (i.e., because he would not carry a firearm, he was excluded from a class of jobs). In Williams, however, there

14

was an opinion from a competent psychologist that Williams had "major depression, recurrent, severe." Further, he was under treatment, including drugs. Finally, Williams was not making an ADA disability claim, but rather a retaliation claim. The Court found that Williams did not have to show disability, but only a good faith belief that he was entitled to ask for a reasonable accommodation. Here, however, the chief claim is for disability. There is no clinical diagnosis of depression. Nor is there any record of treatment. Further, removal of Santiago's firearm was only temporary, and he continued to carry out his immediate assignments without carrying a firearm. In these circumstances, the Court rejects the argument that suspension of a police officer's ability to carry a gun constitutes an impairment of a major life activity, which is limited to eating, sleeping, walking, seeing, talking, hearing and breathing. Mescall v. Marra, supra at 373.

> The NYPD never regarded Santiago as disabled. Temporary removal of his weapon did not result in the loss of his job, or loss of pay or any benefits. The fact is that Santiago continued his employment, until he voluntarily left the NYPD.

> Santiago's argument that his disability was not accommodated, is no more than an invitation to a guessing game. Since Santiago never told any official in the NYPD what his medical condition was, and there is no competent medical opinion supporting his claim of an impairment, the NYPD would have to guess that something was bothering Santiago. Thereafter, although it is difficult to see how this task is to be accomplished because the NYPD cannot look into Santiago's head, the NYPD would have to design the appropriate accommodation, based on its guess as to Santiago's impairment. All of this, of course, is done at the NYPD's peril. The law imposes no

such obligation. Instead, Santiago must demonstrate that he has a disability (which he does not) and tell the NYPD about it (which he did not) before the NYPD has an obligation to accommodate the disability.

The claim of constructive discharge cannot be maintained. It is clear that Santiago voluntarily resigned, against the advice of his Lieutenant who told him not to resign, but to take a paid leave of absence which was clearly available to him. Santiago abandoned any attempt to obtain sick leave after two phone desultory calls to clerks at the Military Extended Leave Desk.

### REINSTATEMENT; RULE 56(f); AND NAME CLEARING

Since there was no legal or factual basis for finding a violation of either the FMLA or the ADA, the NYPD's refusal to reinstate Santiago cannot have violated these laws either. In any event, the NYPD provide a number of reasons, based on objective facts, in support of its decision not to reinstate Santiago. It provided a writing memorializing the reasons at the time of its decision. None of the reasons impacted either the FMLA or the ADA.

Magistrate Judge Dolinger was correct in rejecting Santiago's Rule 56(f). Since Santiago repeatedly maintained that discovery was concluded, he cannot simply shift gears to avoid the consequences of his choice. Finally, the allegations of sexual abuse against Santiago were made in New York State Court. The NYPD made no findings in this regard. Accordingly, this proceeding would not be an appropriate forum for a name clearing hearing arising out of the allegations.

## CONCLUSION

Upon its de novo review of this matter, the Court adopts Magistrate Dolinger's Report and Recommendation. Accordingly, the Plaintiff's summary judgment motion is DENIED. The Defendant's motion for summary judgment is GRANTED. The Clerk is directed to enter judgment dismissing the complaint; and to close out this case.

Dated: New York, New York
December 14, 2007

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge

Copies Mailed To:

Mr. Elmer Santiago
1665 Grand Concourse
Apartment 4
Bronx, New York 10452

Michael Keith Blauschild, Esq.
Assistant Corporation Counsel
City of New York Law Department
100 Church Street
New York, New York 10007